Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellants.

Pecot & Bauer, of Franklin, for appellee.

## COLEMAN v. DANOS et al.

### No. 1927.

Court of Appeal of Louisiana. First Circuit.

Feb. 15, 1939.

OTT, Judge.

The suit is against Dr. J. L. Danos and his insurance carrier, the Maryland Casualty Company, for damages in the sum of $5672.50, on account of personal injuries received by plaintiff on the night of September 27, 1936, when he was struck by a car driven by Dr. Danos in the town of Raceland. Dr. Danos was driving toward Thibodaux on the paved highway that passes through Raceland.

On the North or Bayou Lafourche side of the highway there is a night club known as "Danos' Night Club," with which Dr. Danos had no connection, however, and some 600 or 700 feet east (opposite the direction of Thibodaux) there is a restaurant called the "Wide Awake Restaurant." Plaintiff was walking on the left shoulder of the highway going from the night club to the restaurant, while Dr. Danos was coming in the opposite direction. The plaintiff alleges that Dr. Danos was

driving at an excessive rate of speed, and as he passed plaintiff, his car struck or side-swiped him, the handle on the right door of the Danos car striking or hooking plaintiff in the right groin, causing him to fall against the rear fender, and throwing him on the side of the ditch along side of the highway. Plaintiff itemizes his damages as $232.50 for medical and hospital expenses, $440 for loss of time, $2500 for pain and suffering and $2500 for permanent injury.

Defendants admit that the handle on the right door of the Danos car punctured and tore into plaintiff's body in the region of the right groin; they admit that plaintiff was walking on the left shoulder of the road from the night club to the restaurant as alleged in the petition; but they deny that Dr. Danos was driving at an excessive rate of speed, and deny that Dr. Danos struck down the plaintiff. They aver that on the night in question, while Dr. Danos was driving his car along the highway at a moderate rate of speed, he saw approaching him on the shoulder of the road the plaintiff herein; that just as he was about to pass plaintiff, plaintiff swayed or fell against the side of the said Danos car, receiving injuries thereby; that at the time of the accident in question, the plaintiff was in an intoxicated condition.

Defendants further aver that if the evidence tends to show that Dr. Danos was guilty of any negligence, which is denied, then and in that event, they plead contributory negligence on the part of plaintiff in failing to keep upon the shoulder of the road; in failing to keep from swaying or falling into the side of the automobile, and in being in an intoxicated condition at the time.

The trial court rendered judgment in favor of plaintiff in the sum of $2,560.50. Both defendants have appealed, and the plaintiff has answered the appeal and asks that the judgment be amended by increasing the amount to the sum prayed for in the petition.

As it is admitted that plaintiff was walking on his left side of the road, he was not guilty of any negligence in that respect as that is where the law requires a pedestrian to walk on the public highways. Act No. 21 of 1932, § 3, Rule 11(d). Of course, if plaintiff was walking on the shoulder of the road in an intoxicated condition and "swayed" or "fell" into the side of the Danos car as it passed him, he was guilty of gross negligence sufficient to bar his recovery, regardless of the negligence of Dr. Danos, vel non, as under such a situation, Dr. Danos could hardly be said to have had the last clear chance of avoiding the accident.

It is also obvious that, if Dr. Danos was driving at an excessive speed and pulled his car too far to the right, over the pavement, in passing a car coming in the opposite direction, and struck plaintiff while he was walking on the shoulder of the road, as claimed by plaintiff, there could be no doubt of the liability of Dr. Danos and his insurer for the damages sustained by the plaintiff. Blashfield, Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. 2 p. 394, § 1255.

The trial judge found that the plaintiff was not intoxicated at the time; that he did not sway or fall into the side of the Danos car, but that the sole and proximate cause of the accident was the fact that Dr. Danos, in passing another car coming in the opposite direction, pulled his car too far to the right and struck the plaintiff on the shoulder of the road with the handle of the right door of the car. We are asked by appellants to review the evidence and reach a different conclusion. Including plaintiff and Dr. Danos, there were six eye-witnesses to the accident, three for plaintiff and three for defendants. A brief summary of the testimony of each of these eye-witnesses is necessary to a proper analysis and evaluation of their evidence.

Plaintiff says he was walking on the shoulder of the road about two feet from the edge of the pavement going from the night club to the restaurant; that when he got some 200 feet from the night club, the Danos car, coming from the opposite direction at a speed which he estimated at 50 miles per hour, ran off the edge of the pavement and struck him; that the car left the pavement 12 to 15 feet before reaching him as he was walking on the shoulder; that Dr. Danos stopped his car in front of the night club and then backed up to where he was lying on the road. Plaintiff denies that he ever got off the shoulder or that he fell or swayed into the car; that he probably tried to get out of the way when the car drove toward him, and the wheel of the car ran near the edge of his shoes.

Two young ladies were walking on the shoulder of the road going from the res-

taurant to the night club, and therefore they were meeting the plaintiff coming in the opposite direction. These ladies saw plaintiff coming toward them on the shoulder of the road about 100 feet away. They say that it was a bright moonlight night; that the Danos car passed them going fast, from 45 to 50 miles per hour. They did not see the plaintiff run into the car, but, on the contrary, they say that the car struck him on the shoulder of the road. One of these ladies in describing the accident stated that they saw plaintiff walking on the shoulder, and the car *seemed* to go toward him, and it *seemed* like the front of the car hit the man—the car *seemed* to be running into him. The other lady says that the Danos car was going toward the plaintiff and made a sort of curve in passing another car, and then they saw the man fall in the ditch; that Dr. Danos, after striking the man, swerved back into the middle of the road and continued on until he stopped in front of the night club, a distance of some 300 feet.

Learned counsel for defendants urge that the testimony of these ladies is not sufficiently positive and certain to serve as corroboration of plaintiff in his statement that the Danos car came off the pavement and struck him on the shoulder of the road. They contend that in using the word *seemed* one of the ladies was more or less drawing on her imagination and guessing at her conclusions as to how the accident happened, and that the other lady did not say that she saw the car strike plaintiff, but that it *looked like* the car of Dr. Danos was coming toward the shoulder of the road, toward the man, kind of slanting like.

These two ladies were in a better position to see the accident than anyone else —not excepting the plaintiff himself—as they were directly behind the Danos car, with no lights or obstructions to impair their view. We agree with the trial judge after carefully considering all of their testimony together that when they use the words "seemed" or "looked to us", they meant to say that was the way they saw the accident. If plaintiff had fallen on the car, or had gotten off the shoulder, they certainly would have seen him and would have used some form of language to express that fact.

Dr. Danos testified that he was near the center of the road, going about 45 miles per hour, when he noticed a car coming from the opposite direction; that about the same time he saw plaintiff coming toward him, walking on the shoulder of the road; that as the approaching car neared him, he pulled slightly to the right so as to give the approaching car its half of the road; he *thinks* that he was about in the center of his traffic lane; that he took his foot off the accelerator in passing the other car the lights of which did not blind him; that plaintiff was on the shoulder of the road, and not on the pavement; that as the approaching car passed the front end of his car, his eyes became fixed on the pedestrian who was walking perfectly straight, apparently a foot or two from the edge of the pavement; that all of a sudden, he heard a noise and he then realized that he had hit something. He says that he never got off the pavement; that he never went more than six or eight inches off the edge of the pavement. He says that he went about 150 feet after striking plaintiff, stopped and backed up. The plaintiff and the two ladies say Dr. Danos stopped in front of the night club, a distance of 200 to 300 feet from the accident.

We think the testimony of the Doctor himself shows that he was driving at a rapid rate of speed, too fast under the conditions existing at the time. He was passing through a town where people constantly used the shoulders of the highways for sidewalks. The fact that he saw a pedestrian walking on the shoulder of the road as he was passing another car required that he have his car under control and that he be constantly observant of the movements of the pedestrian. Yet the fact that he did not know that he had struck the plaintiff until he heard the noise indicates that he was not keeping a proper lookout, and the fact that he went from 150 to 300 feet before stopping his car indicates further that he was driving at an excessive rate of speed and did not have his car under proper control.

It is significant that nowhere in his testimony does Dr. Danos say that plaintiff was swaying or staggering as he walked along the shoulder of the road, even though the Doctor saw, or should have seen, him as the front of the car was opposite the point where plaintiff was walking. If plaintiff fell into the side of the car, he must have done so after the front of the

car had passed him, and in that event, as before stated, there is no reason why the two ladies could not have seen him.

The wife of Dr. Danos was riding on the front seat by her husband, and their daughter was riding on the back seat with her arms leaning against the front seat. Mrs. Danos says that she saw plaintiff walking on the shoulder coming toward them; that he was swinging from one side to the other. She *thinks* he fell on the front fender as they came near him, because she heard a noise, a kind of thump, and she told her husband he had hit someone. The daughter says that just as they were about to pass the other car when the plaintiff swayed over and hit the front fender. Both the wife and the daughter say that the car never got off the pavement.

The occupants of the car were not in as good a position to tell whether or not the car projected over the edge of the pavement as were plaintiff and the two ladies. Furthermore, neither does the Doctor nor either occupant of the car with him testify positively that plaintiff got off the shoulder of the road.

On the question of whether or not plaintiff was intoxicated, we agree with the trial judge that the preponderance of the testimony shows that he was not intoxicated. The question is relevant only as it would tend to support the allegation made by defendants that plaintiff staggered or fell into the side of the car. As we have reached the conclusion that plaintiff did not fall or stagger into the side of the car, this question need not be considered further. Defendants have failed to prove any contributory negligence on the part of plaintiff.

On the question of the quantum of damages there is no dispute as to the medical and hospital expenses. The trial court allowed $2000 for pain and suffering and $330 for loss of earnings on account of the injury.

■ Plaintiff evidently suffered very severe pain from the time he was struck in the groin until he was removed to the hospital at Thibodaux, a period of half an hour or more. After he was placed in the hospital, he was given drugs to ease the pain while his wounds were being dressed and treated. It was necessary for the doctors to insert their fingers in the wound and this probing of the puncture caused very severe pain. We have no doubt that

for an hour or so, during the probing and suturing of the wound, the plaintiff suffered agony. He remained in the hospital for almost five weeks and, while his pain was not so severe, it was necessary at times to give him tablets to produce sleep. He also suffered some pain and discomfort for several weeks after leaving the hospital. Under the circumstances, we think the award of two thousand dollars for pain and suffering was fully justified.

■ Plaintiff was earning $10 per week before the injury and was unable to work for three or four months. The trial judge allowed $180 for 18 weeks full loss of time, and found that for the next thirty weeks plaintiff was able to earn about half as much as he did before the injury, and the trial judge allowed $150 for loss of earnings during these thirty weeks. We find no error in these allowances.

■ Plaintiff includes in his demand an item of $2500 for permanent disability to do manual labor. This claim is based on the contention that the injury produced or aggravated an inguinal hernia.

Plaintiff was examined by Dr. Aycock almost a year after the accident, and this doctor says that he found that the injury was below the inguinal region, and he expressed the opinion that the destruction of the nerves and muscles in this region would make plaintiff more liable to further trouble in the way of a hernia—that is the injury, in his opinion, weakens the foundation to the inguinal canal where hernias usually develop. The doctor did not say that plaintiff has a hernia, but that his condition is such that a hernia is liable to occur from hard manual labor.

Three doctors called by defendants—including Dr. Danos—testified that the injury in the region of the right groin could have nothing to do with the enlarged inguinal rings found on both sides of plaintiff for the reason that the injury was below the inguinal canal. One of these doctors did find that plaintiff has enlarged inguinal rings on both sides which renders him subject to a potential hernia. But, as found by the trial judge, the preponderance of the medical evidence does not show that the condition of the inguinal rings was caused by the accident. We are not in position to hold that the trial judge was in error in denying recovery on this item.

For the reasons assigned, the judgment is affirmed at the cost of appellants.